IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 127,991

STATE OF KANSAS,
*Appellee,*

v.

DONIEL LEE SUBLETT JR.,
*Appellant.*

SYLLABUS BY THE COURT

A district court's decision to impose a hard 50 sentence for first-degree premeditated murder is reviewed for abuse of discretion.

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Oral argument held April 6, 2026. Opinion filed July 10, 2026. Affirmed.

*Clayton J. Perkins*, of Kansas Capital Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Jacob M. Gontesky*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

WALL, J.: Doniel "DJ" Sublett Jr. shot his pregnant girlfriend while she slept on his mother's couch. Minutes later, he shot her again. Why he did this remains unclear.

1

But this appeal is not about Sublett's guilt. He pleaded guilty to two counts of premeditated first-degree murder: one for his girlfriend and one for the child she was carrying. The questions before us are about his punishment and who decides it.

The standard sentence for premeditated murder is a hard 50: a life sentence with no opportunity for parole for 50 years. But district courts have discretion to impose a lesser hard 25 when mitigating circumstances compel a departure.

Under the plea agreement here, Sublett and the State jointly recommended concurrent sentences but disagreed about their length. The State sought concurrent hard 50s; Sublett sought concurrent hard 25s. After a two-day evidentiary hearing, the district court imposed a hard 50 for each murder and ran them concurrent, meaning Sublett effectively received one hard 50 sentence for two murders.

That decision belonged to the district court. And on appeal, we review that decision for an abuse of discretion. That means we consider only whether the court erred on the law or the facts or reached a decision no reasonable person could accept.

Sublett argues that the court's comments at sentencing show it applied the wrong legal standards when ruling on his motion to depart to a lesser sentence. He also contends the decision was simply unreasonable given his upbringing, substance abuse, and mental state at the time of the shooting.

While some of the court's statements look questionable in isolation, the full ruling—a careful and thorough bench ruling that worked through each of Sublett's 13 proposed mitigating factors—makes clear that the court understood and correctly applied the law. And a reasonable person could agree that the unprovoked murders of two helpless victims did not warrant the lesser sentence, particularly when the court had already agreed to run the sentences concurrent. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Sublett grew up in the Quindaro neighborhood of Kansas City, Kansas. His father was murdered when Sublett was an infant. A teenager was convicted of the crime but exonerated more than 20 years later after evidence emerged of police and prosecutorial misconduct. Beyond that loss, Sublett was raised in an environment marked by poverty, violence, and substance abuse across multiple generations of his family.

Sublett began using illegal substances in adolescence and would later be diagnosed with severe substance-use disorder. By 2018, he was using alcohol and drugs daily and sleeping little. His mental health deteriorated over the following years. By 2021, he was experiencing auditory and visual hallucinations and growing paranoia, including beliefs that his girlfriend was drugging his food and that others were plotting to kill him.

In September 2022, the lead detective in his father's murder case was federally indicted for sexual assault, sex trafficking, and kidnapping. Sublett's grandmother was set to testify at a hearing on the case and asked Sublett to accompany her. The night before that hearing, Sublett and his girlfriend, Kathleen Dampier, who was about five months pregnant with his child, visited his mother's apartment to wash clothes.

Sublett smoked marijuana and drank vodka with his mother before she left to meet Sublett's sister at a nearby restaurant. Sublett was in his mother's room watching television. Kathleen was asleep on the living room couch. Sublett's brother was in his own room.

Sublett's brother emerged when he heard a shot. Sublett told him to call an ambulance, and his brother ran outside. An arriving officer met Sublett's brother. As they

3

walked toward the apartment, a second shot rang out. Sublett emerged shortly after. He initially followed the officer's command to lie down but then fled.

Officers caught Sublett after a short foot chase and arrested him in another part of the complex. He had hidden a gun in a wall-mounted box behind a fire extinguisher—the same gun he had used to shoot Kathleen twice in the face at close range. She and their unborn baby died as a result of the shooting.

Sublett behaved erratically after his arrest. He was anxious when placed in the police car and passed out on the way to the station. When officers pulled over to check on him, he was disoriented and asked why they had arrested him for walking down the road. Footage from the station showed him staring blankly for stretches, removing his pants and standing in his underwear, and licking a window before breaking into smiles, dancing, and wiggling.

Sublett eventually pleaded guilty to two counts of premeditated first-degree murder. See K.S.A. 21-5419(c) (extending the definition of "person" under the first-degree murder statute to include an unborn child). The parties jointly recommended concurrent sentences, and the plea agreement provided that Sublett would seek a downward departure to a hard 25 on each count.

Sublett's counsel filed an extensive departure motion—54 pages, 2 expert reports, and 13 proposed mitigating circumstances. It argued that compounding trauma rooted in racism, his father's murder and the corruption surrounding it, and severe drug addiction had so profoundly impaired Sublett's judgment and moral culpability that hard 25 sentences were warranted. He cited 13 mitigating factors:

(1) "Racism and a drug epidemic negatively affected the trajectory of DJ's life before he was even born."

4

(2) "DJ experienced the traumatic loss of a parent and grew up without his father's love and support."

(3) "DJ experienced ongoing and additional trauma related to the loss of his father because of the criminal justice system's failings."

(4) "DJ fell prey to a severe addiction to drugs and alcohol that deeply affected his life and actions."

(5) "At the time of the shooting, DJ's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired."

(6) "At the time of the shooting, DJ was suffering from an extreme mental or emotional disturbance."

(7) "DJ had nothing to gain from killing Kathleen Dampier and their unborn child."

(8) "When he committed the shooting, DJ was young."

(9) "DJ has no significant history of criminal convictions."

(10) "DJ has accepted responsibility and is remorseful for the deaths he caused."

(11) "Hearing loss is a significant physical disability that has negatively affected and will continue to negatively affect DJ's life."

(12) "DJ has a loving and supportive family, and he loves and supports others within his family."

(13) "Incarcerating DJ with no hope of release during his children's prime adult lives will be detrimental to their lives, and it would deprive DJ of the hope that his rehabilitation can bring him back to his children."

5

The district court heard two days of evidence on the motion and denied it in an extensive ruling from the bench. The court found some mitigating factors "substantial" but could not conclude that the evidence was "so unique and persuasive to overcome" the hard 50 presumption. It agreed to honor the parties' recommendation of concurrent sentences but imposed concurrent hard 50s because, even "taking into account all of" the mitigating circumstances, the court was "not forgetting the fact" that "two lives are gone from your actions."

Sublett appealed directly to our court, which has jurisdiction because the district court imposed a life sentence for an off-grid crime. See K.S.A. 22-3601(b)(3)-(4); K.S.A. 21-5402(b). We heard oral argument on our April 2026 docket.

ANALYSIS

A district court can deviate from a hard 50 sentence in a premeditated first-degree murder case only if, after a review of mitigating circumstances, it finds "substantial and compelling reasons" to do so. K.S.A. 21-6620(c)(1)(A). A "'substantial and compelling reason[ ]'" is "'something that is real, not imagined, and of substance'" that "forces a court—by the case's facts—to abandon the status quo." *State v. Boswell*, 314 Kan. 408, 412-13, 499 P.3d 1122 (2021).

We review the district court's decision not to depart from a hard 50 sentence for an abuse of discretion. *State v. Mitchell*, 320 Kan. 775, 778, 571 P.3d 604 (2025). A court abuses its discretion if its decision turned on a legal or factual error or was arbitrary or unreasonable. 320 Kan. at 778. Sublett bears the burden of showing such error. *State v. Peters*, 319 Kan. 492, 497-98, 555 P.3d 1134 (2024).

6

Sublett argues that the court applied incorrect legal standards when evaluating two statutory mitigating circumstances tied to his mental state. He also argues that the decision was objectively unreasonable given his circumstances. Neither argument is persuasive.

I. *Sublett has not shown that the district court applied incorrect legal standards when evaluating two statutory mitigating circumstances tied to his mental state.*

Sublett's legal-error argument focuses on two statutory mitigating circumstances:

"(2) The crime was committed while the defendant was under the influence of extreme mental or emotional disturbances.

. . . .

"(6) The capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired." K.S.A. 21-6625(a).

He argues that the district court repeatedly described the substantially-impaired-capacity provision in subsection (a)(6) using language associated with insanity or involuntary-intoxication defenses rather than the statute's own "substantially impaired" standard. He also argues that the court failed to address the extreme-disturbances provision in subsection (a)(2).

A. *The four challenged statements do not show legal error.*

Sublett challenges four specific statements from the district court's bench ruling. He provides some surrounding context for each, but not much. And in each instance, the context is critical to the statement's meaning. We supply that context as we address each statement in turn. As will become apparent, at least one challenged statement was merely

7

summarizing Sublett's own argument, another was the court's attempt to distill statutory language that it elsewhere cited for a layperson, and another was made while the court was evaluating an entirely different mitigating circumstance.

1. *"[A]t the time of crime you didn't know the difference between right or wrong or that you were not able to control yourself."*

Sublett's departure motion was extensive: 54 pages, 2 expert reports, and 13 proposed mitigating circumstances. As the court went about resolving the motion, it generally addressed the 13 mitigating circumstances in the order Sublett had raised them in his motion. It began with Sublett's first proposed circumstance: "Racism and a drug epidemic negatively affected the trajectory of DJ's life before he was even born." It then addressed the traumatic loss of his father. And it discussed the ongoing trauma surrounding the exoneration of his father's convicted killer and the federal indictment of the detective allegedly responsible for the wrongful conviction.

The court then turned to Sublett's next proposed circumstance: that "a severe addiction to drugs and alcohol [had] deeply affected his life and actions." It detailed some of his personal and family history of substance abuse. But it paused to note that, besides substance use, the most applicable mitigating circumstance was the one in K.S.A. 21-6625(a)(6): whether Sublett's capacity "to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired." The court said it would "talk about that [statutory mitigating circumstance] in a few minutes."

During this detour, the court made the first statement Sublett challenges, that this mitigating factor involved whether "at the time of crime you didn't know the difference between right or wrong or that you were not able to control yourself":

8

"It's argued that in essence that you'd be less blameworthy, I think is the term that was used, from your drug usage because of the impairment of your cognitive functioning, meaning how your brain works, that that longterm substance abuse had an impact certainly if you're using at such a young age, and the doctor testified during that time period when your brain is developing and you're interrupting it, you're bringing it down when it's trying to be formed, be created into an adult mind. It's argument that was an impairment and that that would make you not capable of operating with your own conscious self-control at the time. Is this something that *at the time of crime you didn't know the difference between right or wrong or that you were not able to control yourself*." (Emphasis added.)

Sublett argues that this language reflects a heightened standard akin to an involuntary-intoxication or insanity defense rather than K.S.A. 21-6625(a)(6)'s "substantially impaired" capacity standard. Under K.S.A. 21-5205(a), involuntary intoxication is a defense if it "rendered such person substantially incapable of knowing or understanding the wrongfulness of such person's conduct and of conforming such person's conduct to the requirements of law." Two strands of insanity defenses are also relevant: the "'moral capacity'" standard, which applies when a defendant is "'unable to understand that his action [was] wrong,'" and the "'volitional capacity'" standard, which applies when a defendant is "subject to 'irresistible[ ] impulse[s]' or otherwise unable to 'control[ ] his actions.'" *Kahler v. Kansas*, 589 U.S. 271, 274-75, 140 S. Ct. 1021, 206 L. Ed. 2d 312 (2020).

But the court was not doing legal analysis of K.S.A. 21-6625(a)(6) here—that came later in the ruling. Instead, it was summarizing Sublett's own arguments. The court opens with "[i]t's argued that . . ." and then says, perhaps somewhat inarticulately, that "[i]t's argument that was an impairment and that that would make [Sublett] not capable of operating with [his] own conscious self-control at the time" and that Sublett "didn't know the difference between right or wrong or that [he was] not able to control [him]self." These comments are precisely what Sublett's motion argued: that he "was likely not

9

capable of operating with conscious self-control"; was "unable to fully and rationally distinguish between right and wrong"; and was "unable to fully control his own actions." The court was echoing Sublett's own language back to him, not applying legal standards at all.

    2.   *"Was it so pervasive that you could not conform your conduct to the requirements of law."*

After that aside, the court returned to whether Sublett's longtime addiction constituted a mitigating circumstance. It noted that it had already found "the circumstances of your family and the loss of your father's murder" to be "substantial" reasons. But it determined that Sublett's long-term substance abuse was not. In doing so, it made the second challenged statement, asking whether the abuse was "so pervasive that you could not conform your conduct to the requirements of law":

> "The first several points here of the community in which you were raised, born into and raised, and the circumstances of your family and the loss of your father's murder, are substantial. The resulting longterm substance use that you engaged in, including alcohol as well, I do not find that's a basis to say that that impacted or as a substantial and compelling matter as far as restricting your understanding of or appreciating that your conduct is criminal. *Was it so pervasive that you could not conform your conduct to the requirements of law.* What we have is ongoing conflict with, I'll say, the women in your life, including, Ms. Dampier, in that your addiction in itself is not a substantial basis here. It's a component of the factors to look at." (Emphasis added.)

Sublett again argues that the court failed to apply K.S.A. 21-6625(a)(6)'s "substantially impaired" standard. In his view, "could not conform" tracks the involuntary-intoxication defense's "substantially incapable" standard.

But the court was not analyzing K.S.A. 21-6625(a)(6) here either. That came later. At this point it was still working through Sublett's proposed circumstances in order,

evaluating whether his long-term addiction—a separate circumstance—was a substantial and compelling reason to depart. It was not addressing his mental state at the time of the shooting. And the language responded to arguments made in Sublett's own motion, including that he "suffers from a substance use disorder that has permeated most aspects of his thinking for almost half of his life" and "could not make healthy long-term decisions and was driven by a chemical impulse and need for drugs." The court was asking whether the addiction was so pervasive it made him unable to follow the law. It concluded it was not.

3. *"Basically saying you weren't aware of what you were doing."*

The court then moved to the next argument in Sublett's departure motion: "At the time of the shooting, DJ's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." This is where the court ruled on K.S.A. 21-6625(a)(6). It found that the evidence did not support the mitigating circumstance, and in doing so made the third statement Sublett challenges: the court's comment that the standard is "[b]asically saying you weren't aware of what you were doing":

> "Was your cognitive or mental functioning, which was even lessened or worsened by the drug usage or extensive drug usage, I do not find the evidence here compelling to say that that is so much so that it substantially impaired your ability to understand what was criminal. *Basically saying you weren't aware of what you were doing*." (Emphasis added.)

Sublett contends that this paraphrase shows the court applied a third strain of the insanity defense: the "cognitive capacity" standard. That standard asks whether a defendant's "mental illness left him 'unable to understand what he [was] doing' when he committed a crime." *Kahler*, 589 U.S. at 274.

11

That reading does not hold up in context. The court stated the correct substantially-impaired-capacity standard immediately before the challenged comment and quoted the precise statutory language two other times in its full ruling. Its attempt to explain what the standard "[b]asically sa[id]" was consistent with its earlier effort to "maybe eliminate some of the legalese" when explaining departure sentencing more generally. The court was translating for Sublett, not announcing a different legal test. And even assuming some ambiguity in the paraphrase, Sublett bears the burden of showing legal error. See *Peters*, 319 Kan. at 497-98. Given that the court tied its ruling to the statutory language and applied the correct standard at other points in its analysis, he cannot make that showing.

4. *"weren't able to conform your actions to the legal world that we live in, a world living by the law and not committing crimes"*

After working through the remaining proposed mitigating circumstances, the court began summarizing its rulings. In doing so, it made the fourth statement Sublett challenges, stating that Sublett's "best argument" was that he wasn't "able to conform [his] actions to the legal world that we live in, a world living by the law and not committing crimes":

> "And when we look at the best argument for your factors to be substantial and compelling and some mixture, either your cognitive understanding of what you were doing was impaired to such a point that you didn't—*weren't able to conform your actions to the legal world that we live in, a world living by the law and not committing crimes*, your substance abuse and how that played into it[.]" (Emphasis added.)

Sublett again argues that this language reflects an incorrectly heightened application of the "substantially impaired" standard under K.S.A. 21-6625(a)(6). But the court characterized this as Sublett's "best argument," suggesting it was again drawing on the language of his motion rather than announcing a legal standard. And as with the

12

previous statement, the court may simply have been translating the statutory language into plainer terms. Either way, the court cited the statutory language correctly several times and specifically tied its ruling on K.S.A. 21-6625(a)(6) to that language. Sublett has not carried his burden to show legal error. See *Peters*, 319 Kan. at 497-98.

B. *Context makes clear that the court considered and ruled on Sublett's argument under K.S.A. 21-6625(a)(2).*

Sublett also argues that the district court failed to address the other statutory mitigating circumstance tied to mental state: whether "[t]he crime was committed while the defendant was under the influence of extreme mental or emotional disturbances." K.S.A. 21-6625(a)(2). The court did not cite that statutory language when ruling on this circumstance. But it did not need to, for the context makes clear that it considered and rejected the argument.

In his departure motion, Sublett proposed this circumstance directly after the substantially-impaired-capacity circumstance discussed above. He argued that he was in a state of extreme mental or emotional disturbance when he shot Kathleen. He pointed to paranoid delusions triggered by mixing narcotics; substance abuse brought on by the chronic stress of his father's murder; and the upcoming trauma of accompanying his grandmother to the indicted detective's hearing.

The court addressed this circumstance immediately after concluding that Sublett's allegedly impaired capacity was not a substantial and compelling reason to depart—the same order Sublett had raised them. It worked through his history of paranoia, his long history of drug use, and the detective's upcoming hearing before concluding that it "d[id] not see that that [was] substantial and compelling to your actions":

13

"The evidence of your feeling paranoid, that you thought you were being poisoned or that people were following you could be as a result of the mixture of drugs you were using, the amount of drugs you were using, the functioning in your brain that has clearly been affected or diminished by a lifetime, at least during your adulthood, even back into your teenage years, of using drugs consistently. The paranoia when you were believing that Ms. Dampier was mixing meth and trying to get you hooked on meth and the marijuana you were using with her, that's something you thought might be happening. No evidence to support that.

"And the fact of your only recurrent trauma, recurring trauma, knowing that they just announced the charges against Detective Golubski, and that following Monday after this happened, you were planning to go with your grandmother to first appearance or arraignment in federal court. When viewed in light of September 18th, 2022, I do not see that that is substantial and compelling to your actions then."

The court did not label this ruling as an evaluation of K.S.A. 21-6625(a)(2). But it addressed each argument Sublett had raised under that circumstance and found none of them compelling. Sublett fails to show legal error.

II. *A reasonable person could agree with the decision to impose concurrent hard 50 sentences for two first-degree premeditated murders.*

Sublett's remaining argument is that his sentence is objectively unreasonable. The district court found several mitigating factors substantial, such as those tied to his community, his family circumstances, his father's death, and his family's ongoing support. It also recognized other mitigating evidence that fell short of substantial and compelling, including remorse, a hearing disability, substance-abuse disorder, and lack of motive and criminal history. Sublett contends that any reasonable judge faced with these circumstances would have granted a departure.

14

But Sublett fails to show that "'no reasonable person would have taken the view adopted by the trial court.'" *Mitchell*, 320 Kan. at 779. A reasonable person could conclude that the mitigating factors, even those it found substantial, did not compel a departure because, as the court put it, "two lives are gone from [Sublett's] actions." The court had already agreed to impose concurrent sentences, so a departure would have in effect imposed just one hard 25 for two premeditated murders. The court's explanation that it was imposing hard 50s because Sublett killed two people reflects a logical and reasonable basis for that decision. We recently affirmed a court's discretion to rely on that rationale to impose *consecutive* hard 50s. See 320 Kan. at 780.

CONCLUSION

Kathleen and the child she carried are dead. Kathleen's other children now grow up without their mother, and Sublett's own children will grow up without their father. His family bears that loss too, along with the knowledge that the cycle of violence and substance abuse that shaped Sublett's life did not end with him. He accepted responsibility through his plea. And though experts testified about the toll of prolonged drug use on his mind, the record leaves unresolved why Sublett shot Kathleen at all, let alone why, after several minutes, he shot her again. Some acts resist explanation.

The Legislature has set the standard sentences for crimes like these but has entrusted to district courts the work of fitting punishment to the specific circumstances of specific defendants. We have no doubt that Sublett sees the evidence differently than the district court did. In his view, his upbringing, his father's murder and its aftermath, and years of substance abuse and deteriorating mental health are central facts about his moral culpability for these crimes.

Those are serious concerns, and the district court treated them so. It held two days of evidentiary hearings, worked through each of the 13 mitigating factors Sublett

15

proposed, and issued a careful ruling that addressed each argument on its merits. That is what the law asks of a sentencing court. For appellate courts, absent a legal or factual error or a decision that no reasonable person could accept, we have no license to substitute our judgment for the district court's. Sublett has not shown any of those things. We therefore affirm his sentences.

Affirmed.